# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:19-00156

DJUAN TERRELL HARRIS

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Djuan Terrell Harris' Renewed Motion for Judgment of Acquittal (ECF No. 92) and his Motion for a New Trial. ECF No. 93. For the reasons stated below, the Court **DENIES** both motions.

On June 26, 2019, Defendant Harris was charged in a single-count superseding indictment of illegal possession of a firearm on or about May 31, 2019, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The superseding indictment alleges that Defendant Harris was prohibited from possessing a firearm because "he knew he had been convicted of crimes each punishable by a term of imprisonment exceeding one year as defined in 18 U.S.C. § 921(a)(20), that is, convicted of Possession of a Controlled Substance in violation of MCL § 333.7403(2)(A)(v) on or about May 15, 2015, in the Third Judicial Circuit Court, Wayne County, Michigan, and convicted of Possession of a Controlled Substance in violation of MCL § 333.7401(2)(A)(iv) on or about May 15, 2015, in the Third Judicial Circuit Court, Wayne County, Michigan." *Superseding Indictment*, at 1-2, ECF No. 6. On November 20, 2019, Defendant Harris was convicted by jury at the end of a one-day trial.

Defendant Harris now moves for a judgment of acquittal and for a new trial for four reasons. First, Defendant Harris argues he is entitled to acquittal or a new trial because the evidence at trial was insufficient to sustain his conviction. Second, he asserts he is entitled to a new trial because the Government should not have been permitted to introduce the 2015 Information filed against him in Michigan or evidence that he was in actual possession of a firearm. Third, he contends he is entitled to a new trial because the Government misstated its burden of proof in its closing argument which confused and misled the jury. Fourth, he argues he is entitled to a new trial because the jury pool was not representative of his race and, therefore, violated his Sixth Amendment right to a jury of his peers. Upon review, the Court denies each of these challenges.

When considering a motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure based upon the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the Government and determine if "the verdict is supported by substantial evidence." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018) (citation omitted). "Substantial evidence" exists if a rational jury could accept the evidence "as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id*. (citation omitted). The Court's role is not to second guess the credibility of any witness, but it should "assume the jury resolved all contradictions in testimony in the government's favor." *Id*. (citation omitted). "A defendant bringing a sufficiency challenge must overcome a heavy burden, and reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *United States v. Edlind*, 887 F.3d 166, 172 (4th Cir.), cert. denied, 139 S. Ct. 203 (2018) (internal quotation marks and citations omitted). As it is the responsibility of the jury "to determine what the defendant actually did, knew, and intended, [the Court] will conclude that the evidence was

sufficient to sustain the conviction as long as a rational jury, making permissible inferences, could find beyond a reasonable doubt that the elements of the counts were satisfied." *Id*. (internal quotation marks and citation omitted).

With respect to Defendant's Motion for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). To the extent the sufficiency of the evidence is challenged, the Court's discretion to grant a new trial under Rule 33 is broader in nature then under Rule 29 because Rule 33 does not require a court to view the evidence in the light most favorable to the Government. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985) (stating that under Rule 33 "the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government [and] . . . may evaluate the credibility of the witnesses"). However, the Court should only overturn a jury verdict in the "rare circumstance" when the verdict is against the great weight of the evidence. *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (citation omitted). Additionally, it is generally accepted that a court may grant a new trial if a "substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citations omitted).

In this case, Defendant Harris does not challenge the fact he previously was convicted of a term exceeding one year, he was prohibited from possessing a firearm, he possessed the Sig Sauer P229 .40 caliber handgun described in the superseding indictment, and the firearm traveled in interstate commerce. Instead, he insists the Government failed to establish sufficient evidence that he knew his prior conviction was punishable by at least one year of imprisonment

and, therefore, no rational jury could find the government satisfied the "knowing" element of the offense. *See Rehaif v. United States,* 139 S. Ct. 2191, 2200 (2019) (holding "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and that he knew he belonged to the relevant category of persons barred from possessing a firearm*" (italics added)).

In support of his position, Defendant Harris makes two general arguments. First, he asserts he was never told that his Michigan sentence was punishable by a term exceeding a year. With respect to this argument, Defendant submitted the transcript from his 2015 sentencing hearing in Michigan as evidence that the statutory maximum sentence was neither mentioned nor explained to him. Instead, he was told his guideline sentence under Michigan law was up to eleven months. Second, Defendant contends that, even if he was somehow informed, he did not remember it due to memory problems he has as a result of a brain injury he suffered from a motorcycle accident in March of 2007. To back this claim, he submitted medical records containing a notation dated August 29, 2008, that his mother said "he has difficulty with his memory." *Med. R. by Nuala Crotty, M.D.*, ECF No. 81-8, at 30. Defendant's sister also testified at trial that he lived with her years earlier and, at that time, had problems remembering things she asked him to do such as taking out the trash and taking meat out of the freezer. As further evidence he did not know he belonged to a category of prohibited people, Defendant Harris presented the testimony of Officer Colin Cooper of the Huntington Police Department. Officer Cooper stopped Defendant Harris approximately two weeks prior to the instant offense[1] and Defendant voluntarily gave him the

---

[1] Officer Cooper stopped and questioned Defendant Harris on May 13, 2019.

firearm he was carrying at the time. Not aware that Defendant Harris was a prohibited person, Officer Cooper gave the firearm back to him. Defendant asserts the fact he handed over his firearm to a police officer who, in turn, gave it back to him, gives credence to his contention that he did not know he was in a category of individuals not permitted to have firearms. Given this evidence, Defendant insists a rational jury could not find he violated § 922(g)(1).

On the other hand, the Government argues the evidence supports the jury's verdict. At trial, the Government presented official documents from Michigan to establish Defendant Harris was informed he was convicted of an offense punishable by a term exceeding a year. Specifically, the Government submitted into evidence redacted, certified copies of the Michigan "Complaint Felony" (ECF No. 81-3); the "Information Felony, containing language providing: "FELONY: 20 Years and/or $25,000.00" (ECF No. 81-4); and the May 15, 2015 "Order of Conviction and Sentence" (ECF No. 81-5) and "Order of Probation (Felony)," providing for two years of probation. ECF No. 81-6. Defendant Harris' signature appears on the "Order of Probation (Felony)" underneath a statement proving that he "read or heard the above order of probation and . . . received a copy." *Id.*[2] The Court also took judicial notice of two Michigan Court Rules of Criminal Procedure. The first rule requires a court inform an accused of the nature of the offense charged, the maximum possible sentence, and any mandatory minimum sentence required by law. *See* Mich. Ct. Rule 6.104(E*)*. The second rule requires the prosecutor to give the defendant a copy of the information prior to a plea. *See* Mich. Ct. Rule 6.113(B*)*. Given the totality of this evidence, the Government contends a rational jury could have concluded that Defendant Harris was aware

---

[2]The trial transcript also indicates that Defendant Harris was represented by counsel when the sentence was imposed. ECF No. 81-9.

he was convicted of a crime punishable by a term exceeding a year. Additionally, as to Defendant's alternative theory regarding his memory, the Government does not contest that he suffered a head injury in 2007, but it points out that the evidence he submitted regarding memory problems was from years ago and consists of a comment by his mother to his doctor in 2008 and his sister's testimony he had problems with his memory when he lived with her. The Government argues a rational jury did not have to believe that, to whatever extent it even believed Defendant Harris had memory problems years earlier, those problems continued to persist more than ten years after his accident.

Upon review, the Court agrees with the Government on both points. Certainly, the Government set forth substantial documentary evidence that Defendant was aware that his Michigan offense was punishable for a term exceeding one year. The court rules required Defendant be told the maximum penalty and he be provided a copy of his Information, which set forth a maximum penalty of 20 years for a felony; each document submitted contained the heading "Felony"; and Defendant signed the "Order of Probation (Felony)," affirming that he had read or heard the order and received a copy. Additionally, the Court finds a rational jury easily could conclude that Defendant had not forgotten this fact when he committed the instant offense, particularly as he just recently had completed serving his two-year term of probation. Thus, in light of this evidence, the Court has no hesitancy finding Defendant failed to overcome his heavy burden of establishing his guilty verdict was not supported by substantial evidence or was against the great weight of the evidence. Therefore, the Court denies Defendant's motions as to the sufficiency of the evidence under both Rule 29 and Rule 33.

As part of his second argument, Defendant Harris asserts he is entitled to a new trial because the Government should not have been permitted to introduce the Information from Michigan because it stated: "FELONY: 20 years and/or $25,000.00." *Information Felony from the State of Michigan*, ECF No. 81-4. As Defendant stipulated that the offense was punishable by a term of more than one year, Defendant argues that allowing the Information to be published to the jury was not probative and highly prejudicial. The Court disagrees.

Although Defendant stipulated the offense was, in fact, punishable for a term exceeding one year, he denies he knew that potential punishment. In response to Defendant's assertion, the Government introduced the Michigan Court Rules requiring that a defendant be provided a copy of the Information and be informed of the maximum possible sentence, and the Government introduced a copy of the Information in which the specific offense conduct was redacted. Given Defendant's position he did not know his potential punishment and the fact the specific offense conduct was redacted from the Information before it was presented to the jury, the Court finds any prejudice Defendant experienced by admitting the Information stating a maximum potential sentence of 20 years was greatly outweighed by its probative value as to a contested issue. Thus, the Court finds no reason to grant to a new trial on this basis.

Similarly, Defendant insists the Government should not have been permitted to introduce evidence of his actual possession of the firearm because he was willing to stipulate to possession. Defendant asserts the Government's decision to reject his proposed stipulation and present evidence of possession created confusion and undue prejudice and allowed the Government to unnecessarily "wave the firearm in the jury's faces" during closing argument. *Def's*

*Mot. for a New Trial*, at 3. However, as ruled at the pretrial hearing on November 18, 2019, the Government was not required to accept Defendant's stipulation as to possession and was entitled to call the arresting officer to testify about the circumstances related to the offense to meet its burden of proof.[3] *See Old Chief v. United States*, 519 U.S. 172, 188-89 (1997) (explaining that juries expect evidence to be introduced and juries may punish a party that fails to produce evidence; for instance, a jury may expect "a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence").[4] Therefore, Defendant is not entitled to a new trial on this ground.

Defendant's third argument is that he should be granted a new trial because the Government misstated the law during its closing argument. In particular, Defendant claims the Government made statements implying that he was guilty because he knew he was convicted of a crime in 2015. Defendant contends such statements confused and misled the jury because the issue was not whether he knew he committed a crime in 2015, but rather whether he knew the crime was punishable by a term exceeding one year of imprisonment. However, as argued by the Government, Defendant failed to object during the Government's closing, thereby waiving his claim of error. *See United States v. Sawyer,* 347 F.2d 372, 374 (4th Cir. 1965) ("[I]f defense counsel does not object during the course of the Government's closing argument he may be said to have waived the point[.]"). Defendant Harris further argues, however, the Court should excuse his

---

[3]The Court did limit the officer's testimony to prevent evidence about stopping Defendant because he had pending arrest warrants.

[4]As explained at the hearing, *Old Chief* did not require the Government to stipulate that Defendant possessed the firearm, and the parties agreed to stipulate that Defendant was convicted of a crime punishable by a term of imprisonment exceeding one year as contemplated in *Old Chief*. *See Joint Stipulation #1*, ECF No. 81-1.

failure to object because the Government's closing was plain error and resulted in a fundamental miscarriage of justice. *See Dennis v. Gen. Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985) (holding an exception to waiver occurs "if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired"). The Court disagrees. Although the Government did argue the evidence showed Defendant had knowledge of his prior offense, it also explained how the evidence proved that he knew the offense was punishable by a term of imprisonment exceeding one year. Additionally, the Court fully instructed the jury as to the elements of the instant offense and provided a copy of those instructions to the jury during the deliberations. Therefore, the Court finds the Government's closing did not result in plain error or a fundamental miscarriage of justice and Defendant's argument fails.[5]

Lastly, Defendant Harris, who is black, challenges the composition of the jury under the Sixth Amendment and *Taylor v. Louisiana*, 419 U.S. 522 (1975). Defendant complains that, of the jurors called, none were any ethnicity other than Caucasian. Therefore, Defendant argues the jury did not represent an accurate and fair cross-section of the community and he should be granted a new trial.

However, Defendant did not object at the time the jury was empaneled or at any point during the proceedings. Therefore, the Government insists Defendant is procedurally barred from bringing this claim. *See McNeill v. Polk*, 476 F.3d 206, 225 (4th Cir. 2007) (King, CJ

---

[5]Additionally, while Defendant represents the Government misstated the law, he does not specifically cite to any particular part of a trial transcript. The Court observes that neither Defendant nor the Government have ordered an official transcript of the trial.

concurring in part and concurring in judgment) (explaining "the right to challenge a juror is waived by failure to object at the time the jury is empaneled if the basis for the objection might have been discovered during *voir dire*" (internal quotation marks and citation omitted)). On the other hand, Defendant argues his failure to object should be disregarded because the jury pool represents plain error of a constitutional magnitude and a miscarriage of justice. In this regard, the Court finds the pool was compiled through a completely randomized computer process from the Registered Voter List from the four West Virginia counties covered by this Division; a procedure accepted by the Fourth Circuit.[6] *See United States v. Cecil*, 836 F.2d 1431, 1445-52 (4th Cir. 1988) (en banc), (holding that, absent evidence of systematic exclusion of a class from the jury pool, it is entirely permissible to use voter registration lists). Defendant Harris makes no claim that this procedure was erroneous or resulted in a systematic exclusion of potential black jurors. In addition, he has offered no evidence that shows a "disproportionate exclusion of a distinctive group." *Duren v. Missouri*, 439 U.S. at 367, 368 (1979) (footnote omitted).[7] The mere fact there were no black

---

[6]This District uses a two-step process of selecting jurors. After names are randomly drawn from the Registered Voter List to create a "master jury wheel," individuals are randomly drawn from that wheel and sent juror qualification questionnaires. If qualified, the individuals are considered prospective jurors and their names are placed on a "second jury wheel." Prospective jurors may be randomly summoned from the "second jury wheel" to appear in court for final jury selection. The mathematical odds of any single name being selected to appear are substantially equal as the result of the randomized process.

[7]In order to establish a prima facie violation of the fair-cross-section requirement, the Supreme Court more fully explained in *Duren* that

> the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364.

individuals in the jury pool summoned to appear in Court for his trial does not mean the pool was not a fair cross section of this Division consistent within the meaning of the Sixth Amendment. Therefore, the Court denies Defendant's challenge under the Sixth Amendment.[8]

Accordingly, for the foregoing reasons, the Court finds Defendant Harris is not entitled to relief under either Rule 29 or Rule 33 of the Federal Rules of Criminal Procedure and **DENIES** his Renewed Motion for Judgment of Acquittal (ECF No. 92) and his Motion for a New Trial. ECF No. 93.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: February 18, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8]Additionally, the Government states that Defendant actually used a peremptory challenge to strike a juror who identified as "Native Hawaiian/Pacific Islander."